2014-1427
(Reexamination No. 90/011,600)

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

IN RE TRAFFIC INFORMATION, LLC

_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board.
_____

**BRIEF FOR APPELLEE – DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

NATHAN K. KELLEY
Solicitor

AMY J. NELSON
MICHAEL S. FORMAN
Associate Solicitors
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the
United States Patent and Trademark Office*

August 29, 2014

# TABLE OF CONTENTS

**Page**

I. Statement of the Issue ...................................................................................1

II. Statement of the Case...................................................................................2

    A. The Claimed Invention.............................................................................2

    B. The Prior Art – Hollenberg .......................................................................8

    C. The Board Decisions ...............................................................................13

        1. Decision on Appeal ......................................................................13

        2. Decision on Rehearing ..................................................................14

III. Summary of the Argument..........................................................................15

IV. Argument...................................................................................................16

    A. Standard of Review .................................................................................16

    B. The Board's Anticipation Findings Are Supported by Substantial Evidence...................................................................................................17

        1. Hollenberg Discloses Requests for Traffic Information .....................18

        2. Hollenberg Discloses Transmission of Traffic Information in Response to a Request by the User ....................................................20

        3. Hollenberg Satisfies the Limitation of Claim 10 ...............................22

        4. Hollenberg Meets Claim 21, Element (d) .........................................25

V. Conclusion..................................................................................................27

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page**

*Baxter Int'l, Inc., In re,*
   678 F.3d 1357 (Fed. Cir. 2012) ........................................................................25

*Bayer Aktiengesellschaft, In re,*
   488 F.3d 960 (Fed. Cir. 2007)...........................................................................17

*Consol. Edison v. NLRB,*
   305 U.S. 197 (1938)..........................................................................................17

*Elsner, In re,*
   381 F.3d 1125 (Fed. Cir. 2004) ........................................................................21

*Jolley, In re,*
   308 F.3d 1317 (Fed. Cir. 2002) ........................................................................17

*LeGrice, In re,*
   301 F.2d 929 (CCPA 1962) ..............................................................................21

*Montgomery, In re,*
   677 F.3d 1375 (Fed. Cir. 2012) ........................................................................16

*Morris, In re,*
   127 F.3d 1048 (Fed. Cir. 1997) ........................................................................17

*Morsa, In re,*
   713 F.3d 104 (Fed. Cir. 2013)............................................................... 17, 20, 27

*Pacer Tech., In re,*
   338 F.3d 1348 (Fed. Cir. 2003) ........................................................................17

*Watts, In re,*
   354 F.3d 1362 (Fed. Cir. 2004) ........................................................................25

**Statutes**                                                                **Page**

35 U.S.C. § 102(e) ........................................................................... 2, 13, 17

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal from the Patent Trial and Appeal Board ("Board") of the United States Patent and Trademark Office in connection with this patent that has previously been before this Court. The Director is aware of the following district court actions that have been stayed pending the outcome of the reexamination proceedings at issue in this appeal: *Traffic Information, LLC v. BBVA Compass Bancshares, Inc.*, No. 2:11-cv-00412 (E.D. Tex.); *Traffic Information, LLC v. Bank of America Corp.*, No. 2:11-cv-00343 (E.D. Tex.); *Traffic Information, LLC v. Commtiva Tech. Corp.*, No. 2:10-cv-00520 (E.D. Tex.); *Traffic Information, LLC v. Huawei Tech. Co.*, No. 2:10-cv-00145 (E.D. Tex.); *Traffic Information, LLC v. Bok Financial Corp.*, No. 2:11-cv-00406 (E.D. Tex.); and *Traffic Information, LLC v. Flixster, Inc.*, No. 2:11-cv-00420 (E.D. Tex.). The Director is unaware of any other case pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in this appeal.

# I.     STATEMENT OF THE ISSUE

Traffic Information, LLC ("TI") claims a system for providing traffic information to mobile users, where the information is based on signals transmitted by traffic monitors or mobile users using a global position system (GPS).  In TI's invention, mobile users submit requests for information along with data about their current location.   In response, the system provides selected portions of a map database and selected portions of a traffic information database based on the location of the mobile user.

The prior art, Hollenberg, discloses the same thing: a system for providing time-critical information, including traffic information, to mobile users. Hollenberg's traffic information is obtained from mobile users using GPS. Hollenberg's mobile users provide location data and requests for information to the control system.  In response, the control system provides traffic information appropriate to the user's situation or location.  TI disputes:  (1) that Hollenberg teaches requests for traffic information, (2) that Hollenberg provides traffic information in response to a request; and (3) that the traffic information provided to Hollenberg's users is selected based on a GPS signal.

The sole issue on appeal is whether substantial evidence supports the Board's findings that Hollenberg anticipates the claimed invention.

## II.     STATEMENT OF THE CASE

This appeal arises from reexamination of U.S. Patent No. 6,466,862 ("the '862 patent"), owned by Traffic Information ("TI").  A1385-1422.[1]  Upon request by a third party, the Examiner initiated reexamination and rejected claims 10-13, and 21-34 of the patent under 35 U.S.C. § 102(e) as anticipated by Hollenberg.[2]  A621-45; A1063-1107; A1245-97.  The Board affirmed the Examiner's rejection.  A8-16; A1-7.  TI then appealed to this Court.

### A.     The Claimed Invention

The '862 patent discloses a system for providing information about current traffic conditions to mobile users.  A1385 (abstract); A1400 (col. 1, ll. 10-13); A1401 (col. 4, ll. 31-33).  The system includes mobile user stations **52** connected to network **50**.  A1386 (fig. 1) (reproduced on next page); A1402 (col. 6, ll. 11-14).  Traffic monitors **20**, each with a detector and a transmitter, generate and transmit signals in response to vehicular traffic to a receiver **30** connected to a computer system **40**.  A1386 (fig. 1); A1385 (abstract); A1401 (col. 4, ll. 33-41).

---

[1] Citations to the Joint Appendix are denoted as "A__."  Citations to Traffic's Brief are denoted as "Br. at __"

[2] Claims 1-5, 7-9, and 14-20 were canceled during an earlier reexamination proceeding.  A1422; *see also* A624; A631.  During the instant reexamination, TI also canceled claim 6.  A748; A753; *see also* A1066.  Thus, only claims 10-13 and 21-34 are at issue in this appeal.

The traffic monitors are arranged at locations along a road, and measure traffic information based on passing vehicles.  A1402 (col. 6, ll. 14-19).



"The traffic monitors **20** may detect or otherwise calculate vehicle speed, average vehicle speed, traffic flow, vehicle frequency, or other data representative of the traffic."   A1404 (col. 9, ll. 58-61).  Upon receiving signals from the traffic monitors, the receiver passes that information to the computer system.  A1403 (col. 8, ll. 31-58).

In one embodiment, mobile user station **52** is contained within a car that further includes a global positioning system ("GPS") receiver **62**.  A1388 (fig. 4) (reproduced below); A1405 (col. 11, l. 63 – col. 12, l. 5).  "The GPS receiver **62**





receives signals from GPS satellites **70** which enable the GPS receiver to determine its location."  A1405 (col. 12, ll. 5-7).  The computer system may then obtain traffic information from mobile users having GPS receiver **62**.  *Id.* (col. 12, ll. 38-39).  For example, user station **52** may track its location and/or calculate its velocity and transmit that information to computer system **40** when it requests

4

traffic information. *Id.* (col. 12, ll. 39-52). Or, the computer system may calculate the velocity of each user. *Id.* (col. 12, ll. 56-67). "[W]here the number of users is sufficiently large, the traffic monitors **20** may no longer be necessary, because the users themselves through mobile user stations **52** and GPS receivers **62** provide enough traffic information to generate useful displays of traffic information." A1406 (col. 13, ll. 14-19).

Preferably, computer system **40** or mobile user station **52** has a stored map database of the road and highway networks for various geographic locations (i.e., latitudes and longitudes), which can be integrated with the traffic data. A1406 (col. 14, ll. 49-55). Thus, "the system can easily overlay traffic information on top of the displayed map data by associating the geographic data (latitude and longitude) corresponding to the traffic information with the geographic data corresponding to the map." A1407 (col. 15, ll. 5-9).

Mobile user station **52** may send a signal to computer system **40** requesting traffic information. A1404 (col. 9, ll. 13-15). In response thereto, "computer system **40** transmits traffic information … to the requesting user station **52**." A1404 (col. 9, ll. 15-19); A1385 (abstract); A1401 (col. 4, ll. 41-44). When a mobile user provides a request for information together with its geographic location, the computer system responds by providing information representative

5

of selected portions of the map database and selected portions of the traffic

information database based on the geographic location.  A1402 (col. 5, ll. 3-11).



The mobile user may then display that information graphically.  A1387 (fig. 3)

(reproduced above); A1402 (col. 5, ll. 11-15).

Claims 10³ and 21 are representative:

10.    [A system for providing traffic information to a plurality of mobile users connected to a network, comprising:

(a) a plurality of traffic monitors, each said traffic monitor comprising at least a detector and a transmitter, said detector providing a signal including data representative of vehicular movement and said transmitter transmitting said signals;

(b) a receiver, remotely located from said transmitter, that receives said signals transmitted by said traffic monitors; and

(c) a computer system interconnected with said receiver and said network;

(d) a mobile user station connected to a global positioning system receiver, a display, and a communicating device; and

(e) *said computer system, in response to a request for traffic information from one of said mobile user stations, providing in response thereto to said one of said mobile user stations traffic information representative of said signals transmitted by said traffic monitors*;

(f) wherein said traffic information transmitted by said computer system is displayed graphically on said display; and

(g) wherein said computer system has a map database, and said computer system, in response to said request for information, transmits map information representative of a portion of said map database, and said map information representative of said map database is displayed graphically together with said traffic information;

h] *wherein said computer system selects said traffic information to provide to said mobile user station based on a signal received from said global positioning system receiver*.

21.    A system for providing traffic information to a plurality of mobile users connected to a network, comprising:

(a) a plurality of mobile user stations, each mobile user station being associated with a display, a global positioning system receiver and a communicating device to allow each of said mobile user stations to send

---

³ Claim 10 depends from independent claim 1, which is now canceled. A13 n.1.  The limitations of claim 1 are incorporated into claim 10, as reproduced, and indicated by brackets.

7

and receive signals;

(b) a computer system interconnected with another communicating device and a network, said computer system being capable of sending and receiving signals to and from said mobile user stations;

(c) said computer system including a map database and a traffic information database, said traffic information database containing data representative of traffic at a plurality of locations;

(d) *at least one of said mobile user stations providing a request to said computer system for information together with a respective geographic location of said one of said mobile user stations, and in response thereto, said computer system providing to said one of said mobile user stations information representative of selected portions of said map database and selected portions of said traffic information database based on said respective geographic location of said one of said mobile user stations*; and

(e) said one of said mobile user stations displaying graphically on said display information representative of said selected portions of said map database and said selected portions of said traffic information database.

A1410-11 (disputed limitations highlighted).

## B.    The Prior Art – Hollenberg[4]

Hollenberg discloses a wireless system for providing time-critical information to mobile computer users, including travel distances and transit times.  A1359 (abstract).  As background, the patent notes the significant amount of time that is wasted by commuters due to lack of timely information about traffic congestion and emphasizes the need for better and timelier traffic information to avoid traffic jams.  A1369 (col. 2, ll. 33-46).  It also acknowledges

---

[4] U.S. Patent No. 6,091,956 (filed June 12, 1997).  A1359-84.

that GPS provides mobile users with precise time signals to compute their

location.  A1370 (col. 3, ll. 6-11).

The invention disclosed by Hollenberg allows mobile users to be provided

with up-to-date map-tracking information.  *Id.* (col. 4, ll. 48-51).  Specifically,

traffic information, including vehicle location, speed, and travel direction data, is

collected and redistributed as real-time graphical information.  A1372 (col. 8, ll.

15-19).

The information is obtained from vehicles using GPS and then transmitted

to other users.  A1361 (fig. 3) (reproduced below); A1373 (col. 9, ll. 40-44).



Specifically, control system **36b** receives signals from satellite **20b** or **20c** via

GPS receiver **34b**.  A1361 (fig. 3); A1375 (col. 14, ll. 27-31).  In addition, mobile

devices **19a** and **19b** receive GPS signals via antennas **21c** and **21d**.  A1361

(fig. 3); A1375 (col. 14, ll. 31-34, 43-49).  Control system **36b**, which is

connected to computer network **30b**, transmits information to vehicle mobile

devices **19a** and **19b** via antennas **14e** and **14f**.  A1361 (fig. 3); A1375 (col. 14,

ll. 13-21).  The geographic locations of mobile devices in the service area are

determined by GPS signals.  A1377 (col. 18, ll. 31-51).  The service provider

correlates that location information with proximate information for transmission

to users.  A1378 (col. 19, ll. 5-9).



An electronic map displays traffic congestion in a user's path so that the congestion can be avoided.  A1362 (fig. 6, reproduced on prior page); A1371 (col. 6, ll. 34-38); A1372 (col. 8, ll. 8-12).  In particular, the user's location and direction **6j** appears on the display along with proximate information, including traffic congestion indication **6m**, and traffic congestion legend **6n**.  A1378 (col. 19, ll. 24-36).

According to Figure 13 of Hollenberg (reproduced on next page), the control system receives data and requests for information from the users at step 94.  A1365 (fig. 13); A1380 (col. 23, ll. 12-29).  The user data that is received is processed to determine user device location and velocity at step 95.  A1380 (col. 23, ll. 29-32).  "User location data is correlated with data from other users to provide near real time, vehicular traffic-pattern situation information for transmission to other users' devices for graphical display[.]"  *Id*. (col. 23, ll. 32-35).  At step 96, user information is updated and a "user's device location is transmitted to user's device for display accompanied with, … ***if appropriate to user's situation***, graphical vehicular traffic pattern information."  *Id*. (col. 23, ll. 37-41) (emphasis added).

At step 97, users may choose filters and options to limit the types of information they receive and how the information is transmitted.  *Id*. (col. 23, ll. 41-48).  Depending on the filters and options, the system selects the appropriate

11

**FIG. 13**



ENTER — 91

INITIALIZE — 92

CONNECT USER — 93

RECEIVE USER DATA & REQUEST FOR SERVICES — 94

PROCESS USER SITUATION DATA — 95

UPDATE USER SITUATION INFORMATION — 96

UPDATE OPTIONS/FILTERS RECEIVED FROM USER — 97

SELECT DB INFORMATION FOR USER'S SITUATION — 98

PROVIDE SITUATION INFORMATION & SERVICES — 99

RECEIVE NEW DATA OR SERVICES REQUEST? — 100

YES

NO

RETURN — 101

90

12

information for user's situation and transmits the information. *Id*. (col. 23, ll. 48-54); A1365 (fig. 13 at steps 98-99). If new data or information requests are received from the user, they are routed through the same processing. A1380 (col. 23, ll. 54-59); A1365 (fig. 13 at step 100). A similar process is shown in Figure 14 of Hollenberg. A1366 (fig. 14).

### C. The Board Decisions

#### 1. Decision on Appeal

The Board affirmed the Examiner's rejection of claims 10-13 and 21-34 under 35 U.S.C. § 102(e) as anticipated by Hollenberg. A8-16; A1245-1297. With respect to representative claim 21, the Board disagreed with TI that Hollenberg fails to disclose providing requests for traffic information to the computer system together with geographic location data. A11-12. Specifically, the Board found that Hollenberg teaches that users send requests to the service provider system along with device location data for determination of user device locations. A12. And, the system provides "graphical vehicular traffic pattern information" in response. *Id*.

Regarding representative claim 10, the Board rejected TI's argument that Hollenberg fails to disclose requests for traffic information for similar reasons. A13. The Board also disagreed that Hollenberg fails to disclose providing traffic information based on a GPS signal. A13-14. The Board found that Hollenberg

13

discloses that user devices receive signals from a GPS satellite and, based thereon, provide global coordinates (i.e., user device location data) to the service provider system.  A14.  Thus, the Board explained, the traffic information provided by the system is based on GPS signals.  A14.

## 2.    Decision on Rehearing

On rehearing, TI argued that Hollenberg fails to teach providing traffic information in response to a request as required by claim 21.  A3.  However, the Board observed that Hollenberg teaches a user sending a request for information to a service provider and in the next step the service provider returns traffic information.  A3-4.  Based on that disclosure, the Board explained, a person of ordinary skill in the art would understand that the providing of traffic information was in response to the request.  A4.  The Board also disagreed with TI that Hollenberg does not teach sending a request for information "together with" a respective geographic location.  *Id*.  Specifically, the Board pointed out that Hollenberg discloses that requests for information are sent "along with" device location data, which a person of ordinary skill in the art would understand to mean "together with."  *Id*.

Regarding claim 10, the Board disagreed with TI's argument that Hollenberg fails to disclose a system where a GPS signal determines which traffic information is selected for transmission to the mobile user stations.  A5.  The

14

Board explained that Hollenberg specifically discloses that the service provider selects and transmits traffic information appropriate to the user's situation based on location data (which is, in turn, derived from GPS signals).  A5-6.

### III.    SUMMARY OF THE ARGUMENT

The Board properly found the claimed invention to be anticipated by Hollenberg.  Hollenberg's disclosed system meets each of the limitations of representative claims 10 and 21.

TI wrongly asserts that Hollenberg does not teach requests for traffic information, as opposed to other types of proximate information.  As the Board found, Hollenberg's users submit requests for information to the service provider and the service provider responds with traffic information, not just other types of proximate information, to the users.  Thus, Hollenberg fairly teaches requests for traffic information.

Moreover, the Board rightly found that transmission of traffic information in Hollenberg occurs *in response to* a request.  As the Board observed, a user's device sends a request for information to the service provider and in the very next step the service provider provides the requested information to the user's device. A person of ordinary skill in the art would understand the transmission of traffic information to be in response to the request.

The Board properly construed claim 10 to require that the selected traffic information be based on GPS signals. TI incorrectly asserts that the Board read the claim to require only that the traffic information, rather than its selection, be based on GPS. But, in both the claimed invention and in Hollenberg, selection of the information is based on the mobile user's location, which is in turn derived from GPS. Thus, TI's argument is premised on a distinction without a difference.

Finally, the Board did not misread claim 21, which requires that the traffic information comprise selected portions of the map database and traffic information databases, and be based on the geographic location of at least one mobile user. TI's argument for a different construction was never raised before the Board and is waived. In any event, the Board's construction is fully consistent with the disclosure and in accordance with the broadest reasonable interpretation standard.

## IV.  ARGUMENT

### A.  Standard of Review

"During examination, claims are to be given their broadest reasonable interpretation consistent with the specification, and claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re Montgomery*, 677 F.3d 1375, 1379 (Fed. Cir. 2012) (internal quotation marks omitted). This court reviews the Board's interpretation of claim

language to determine whether it is reasonable. *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997).

Anticipation under 35 U.S.C. § 102 is a question of fact reviewed for substantial evidence. *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013). "Substantial evidence is 'more than a mere scintilla' and 'such relevant evidence as a reasonable mind would accept as adequate' to support a conclusion." *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)). "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007) (citing *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002)).

### B.    The Board's Anticipation Findings Are Supported by Substantial Evidence

The Board properly affirmed the Examiner's findings that the claimed invention is anticipated by Hollenberg. A10-14; A2-6. As the Examiner found, Hollenberg teaches all of the limitations of representative claims 10 and 21. A1250; A1083-91; A1093-95. TI's arguments to the contrary are unmerited.

17

### 1.    Hollenberg Discloses Requests for Traffic Information

First, TI contends that Hollenberg does not anticipate claims 10 and 21 because it does not disclose requests for traffic information.  Br. at 26-27. According to TI, the Board improperly assumed that since traffic information is sent after a request for information is made, the request must be for traffic information, even though Hollenberg teaches that delivery of traffic information occurs in step 96 independent of whether there has been a request for information and prior to processing of any request in step 97.  Br. at 21-22, 26-27.  TI further argues that the Board improperly assumed that because Hollenberg discloses different types of proximate information and teaches that proximate information can be requested, requests for information may therefore include traffic information rather than just other types of proximate information.  Br. at 19-20.

As an initial matter, claim 21 does not require a request for traffic information, but recites only "a request … for information."  A1411.  And, the "request for traffic information" in claim 10 appears in element (e), which is part of canceled claim 1.  *See supra* at 7; A1410.  Pactiv already conceded that limitation to be unpatentable over the prior art by canceling the claim in the earlier reexamination.  A1422; *see also* A624; A631.

Nevertheless, the Board rightly found that Hollenberg discloses requests for traffic information.  A11-12; A3-4.  As the Board found, Hollenberg discloses

18

that users communicate requests along with device location data to the service provider, and the service provider transmits "graphical vehicular traffic pattern information" in response. A12; A3-4; *see* A1380 (col. 23, ll. 12-41). Thus, Hollenberg fairly teaches that requests are for traffic information. Although some traffic information may be delivered to users in step 96, updating user situation information, additional information is transmitted in step 99, providing situation information. A1365 (fig. 13); A1380 (col. 23, ll. 37-41, 48-54). Both steps occur after the requests for information are received in step 94 and user situation data is processed in step 95. A1365 (fig. 13).

Moreover, Hollenberg discloses that users may select filters or options at step 127 to "selectably define the type of information required from the service provider." A1380 (col. 24, ll. 19-21); *see also id.* (col. 23, ll. 41- 47) ("User information filters, which selectably limit and define the types of information the user suitably requires … are received by the service provider which then updates them"); A1366 (fig. 14). Hollenberg further discloses that the server provides information, including traffic congestion graphical data, at step 129, which occurs after requests for information are received at step 128. A1366 (fig. 14); A1380 (col. 24, ll. 25-34). Therefore, the requests in Hollenberg are for traffic information, not just other forms of proximate information. *See* A1377 (col. 18, ll. 21-31) (mobile users may receive situation information from the service

19

provider, including traffic data or other proximate situation information or services); A1378 (col. 19, ll. 22-34) (mobile users may receive proximate information, including traffic congestion information).  Accordingly, substantial evidence supports the Board's findings.  *See Morsa*, 713 F.3d at 112.

### 2. Hollenberg Discloses Transmission of Traffic Information in Response to a Request by the User

TI also asserts that Hollenberg neither explicitly nor inherently draws a causal link between a request for information from a mobile user station and transmission of traffic information, as required by claim 21.  Br. at 12.  According to TI, the traffic information in Hollenberg is delivered automatically at the discretion of the server rather than at the request of the user.  *Id.*  TI further asserts that Hollenberg does not teach that traffic information is always transmitted in response to a request, but instead teaches that traffic information is transmitted only when appropriate to the user's situation.  Br. at 10-11.

As the Board explained, however, Hollenberg discloses a user's device sending a request for information to a service provider.  A3; A12-13; *see* A1366 (fig. 14) ("SEND REQUEST/DATA TO PROVIDER" <128>); *see also* A1380 (col. 23, ll. 12-18) (describing how service provider "processes users' communicated data and requests for information"); A1365 (fig. 13 ("RECEIVE USER DATA & REQUEST FOR SERVICES" <94>).  In the very next step, the

service provider provides the requested information to the user's device.  A3-4;
*see* A1366 (fig. 14) ("RECEIVE INFO FROM PROVIDER" <129>); *see also*
A1365 ("PROVIDE SITUATION INFORMATION & SERVICES" <99>).
Thus, a person of ordinary skill in the art would interpret Hollenberg's disclosure
to mean that a user's device sends a request for information to the server and the
server provides the information in response to the request.  A4; *see In re Elsner*,
381 F.3d 1125, 1128 (Fed. Cir. 2004) (The test for whether a prior art reference
anticipates is "'whether one skilled in the art to which the invention pertains
could take the description of the invention in the printed publication and combine
it with his own knowledge of the particular art and from this combination be put
in possession of the invention on which a patent is sought.'") (quoting *In re
LeGrice*, 301 F.2d 929, 939 (CCPA 1962)).[5]

There is no suggestion in Hollenberg that traffic information is not
routinely transmitted in response to a request.  Br. at 10-11.  The discussion of
providing information "if appropriate to the user's situation" refers to updating
user situation information in the presence of certain established filters.  A1380

_____

[5] TI mistakenly suggests that the Board required it to prove that traffic
information is only delivered in response to a request and, in the absence of such
proof, the Board construed claims 10 and 21 to permit traffic information to be
delivered without a request.  Br. at 23-24.  The Board made no such requirement.
To the contrary, the Board specifically found that Hollenberg discloses that the
server provides traffic information to mobile users in response to a request.

(col. 23, ll. 37-54). However, the disclosure also indicates that if the server receives a new request for information, it loops back to PROCESS USER SITUATION DATA <95>. A1380 (col. 23, ll. 54-59); A1365 (fig. 13) (step 100); A1366 (fig. 14) (step 132). This would automatically be followed by the server PROVID[ING] SITUATION INFORMATION & SERVICES <99>. A1365 (fig. 13); *see also* A1366 (fig. 14) (step 129). Accordingly, Hollenberg expressly discloses that the server provides traffic information in response to a request.[6]

### 3.    Hollenberg Satisfies the Limitation of Claim 10

TI contends that the Board improperly interpreted claim 10 (limitation [h] of claim 10 as reproduced *supra* at 7) to require only that traffic information is based on a GPS signal, whereas the claim requires that ***selection*** of traffic information be based on a GPS signal. Br. at 13-15. According to TI, the Board's construction of the claim renders the final clause of the limitation ("based on a signal received from said global positioning system receiver") redundant.

---

[6] TI asserts that the Board incorrectly assumes that since the '862 patent teaches multiple types of traffic information, there may be multiple deliveries of traffic information and therefore traffic information may be delivered without a request being made. Br. at 24-25. The Board made no such assumption. Instead, the Board specifically found that Hollenberg discloses that the server provides traffic information in response to a request.

Br. at 14-15.  TI further argues that the Board's construction ignores the limitation "to provide to said mobile user station."  Br. at 16-17.

Admittedly, this issue is a somewhat perplexing due to the nature of the invention.  To use a hypothetical, the claimed traffic information system might be monitoring the beltway around Washington, D.C. with GPS signals.  The system might know that there is heavy traffic around the Wilson Bridge due to slow moving mobile devices in vehicles crossing the bridge.  That information about the Wilson Bridge slowdown would indeed be based on GPS signals.  Now suppose a vehicle approaching the bridge requested traffic information and was given information about the slowdown ahead.  The selection of that information (as opposed to information about the American Legion Bridge) would also be based on a GPS signal—a signal identifying that vehicle's location.  TI is arguing that claim 10 requires not that the traffic information itself (i.e., information that there is a slowdown) is based on GPS signals, but that *selection* of traffic information is based on GPS signals.  The short answer is that it does not matter: Hollenberg teaches both.

As the Board found, Hollenberg discloses a mobile user sending requests for information, along with location information, to the server and the server providing traffic information in response.  A5; A12-13; *see* A1380 (col. 24, ll. 25-28) ("information requests are sent, along with periodic location information

23

reports or data, to the service provider at SEND REQUEST/DATA TO

PROVIDER <128>"); *id*. (col. 24, ll. 29-34) ("Situation information from the

service provider, … including traffic congestion graphical data … are received at

RECEIVE INFO AT PROVIDER <129>"); A1366 (fig. 14) (steps 128-129).

That traffic information is derived from GPS signals.  A5; *see* A1377 (col. 18, ll.

31-33) ("The approximate locations of the devices are derived from timing

signals received from the GPS satellite constellation").  And that traffic

information is provided to the mobile users.  A1373 (col. 9, ll. 1-4) ("a system for

providing mobile users with … time-critical situation information, such as that

pertaining to traffic congestion"); A1370 (col. 4, ll. 48-49) (the system "provides

users with up-to-date map-tracking information"); A1380 (col. 23, ll. 32-34)

("[u]ser location data is correlated with data from other users to provide near real

time, vehicular traffic-pattern situation information for transmission to other

users' devices").

Both Hollenberg and the disclosed invention derive traffic information

from mobile users using GPS signals and both select traffic information most

appropriate to a particular mobile user's needs, i.e., based on the user's location,

which is also based on a GPS signal.  *Compare* A1405 (col. 12, ll. 38-67); A1406

(col. 13, ll. 14-19); A1402 (col. 5, ll. 3-15); A1388 (fig. 4); A1387 (fig. 3) *with*

A1377 (col. 18, ll. 31-51); A1373 (col. 9, ll. 40-43); A1362 (fig. 6); A1361 (fig.

3).  Thus, the Board rightly found that TI fails to demonstrate a meaningful distinction between Hollenberg's system and the claimed invention as properly construed.  A5-6.

### 4.    Hollenberg Meets Claim 21, Element (d)

Finally, TI argues that the Board, like the Examiner, misread the language in claim 21(d), to require only that "selected portions of said map database and selected portions of said traffic information database" be "based on said respective geographic location," while the claim also requires that the geographic location submitted with the request for information be the basis for selecting the portions of the map database and traffic information database.  Br. at 17-18 (citing Examiner's Answer at A1272).

TI fails to reference a particular portion of the Board's decision that is deficient.  That is because this particular argument was not squarely presented before the Board (A1152-80), and thus the Board did not have an opportunity to address it.  *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (citing *In re Watts*, 354 F.3d 1362, 1367-68 (Fed. Cir. 2004)) (arguments not raised before the Board are waived).

TI's argument also fails on the merits.  In the cited portion of the Examiner's Answer, the Examiner simply stated that the claim requires that traffic information be based on location data received from mobile users.  A1272.

25

The Examiner also interpreted the claim to not require that the traffic information requested by a mobile user be derived exclusively from the geographic location of that mobile user.  A1273.  The Board affirmed the Examiner's anticipation findings based on claim 21(d) as properly construed.  A11-13; A3-4.  There is nothing improper about that construction.

The limitation of claim 21(d) requires that the traffic information comprise selected portions of the map and traffic information databases, and that it be based on the geographic location of at least one mobile user.  A1411. ("information representative of selected portions of said map database and selected portions of said traffic information database based on said respective geographic location of said one of said mobile user stations").  Hollenberg does just that.  *See, e.g.*, A1377 (col. 18, ll. 21-51) (locations of devices are derived from GPS signals and used by the service provider to produce mappably accurate location data for the mobile users); A1380 (col. 23, ll. 32-35) ("User location data is correlated with data from other users to provide near real time, vehicular traffic-pattern situation information for transmission to other users' devices for graphical display"); A1378 (col. 19, ll. 5-7, 24-36) (service provider updates location data and other proximate information for transmission to users to display traffic congestion on map); *see also* A1361 (fig. 3); A1362 (fig. 6).  Moreover, in Hollenberg, just as in the disclosed system, the traffic information that the server

26

provides to the mobile user is based on the user's location, which is submitted with its request for information. *See supra* at 24,

Substantial evidence thus supports the Board's and the Examiner's findings. *See Morsa*, 713 F.3d at 112.

## V.     CONCLUSION

The Board's decision should be affirmed because its claim construction is reasonable and substantial evidence supports its findings that the claims are anticipated by Hollenberg.

August 29, 2014                              Respectfully submitted,

     /s/ Amy J. Nelson
_____
NATHAN K. KELLEY
Solicitor

AMY J. NELSON
MICHAEL S. FORMAN
Associate Solicitors

U.S. Patent and Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313

*Attorneys for the Director of the*
*United States Patent and Trademark Office*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2014, the foregoing BRIEF FOR APPELLEE—DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE was electronically filed using the Court's CM/ECF filing system.  Counsel for appellant was electronically served by and through the Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(a) and 25(b).


/s/ Amy J. Nelson
———————————————————
Amy J. Nelson
Associate Solicitor
U.S. Patent and Trademark Office